## AS TO THE EQUITABLE REMEDY OF SPECIFIC PERFORMANCE.

Circuit Court of Cuyahoga County.

ELITA E. PECK v. ELIZABETH D. OSBORN.

Decided, December 9, 1907.

*Specific Performance—Not Decreed where Inequitable—Parol Evidence of Mistake in Defense to Action.*

1. The equitable remedy of specific performance of contracts even when they are valid and binding at law is not a matter of course, and is so completely governed by equitable consideratons that it is never granted unless it is entirely in accordance with equity and good conscience.

2. In actions for specific performance of written agreements, the defendant may show by parol evidence that, through the mistakes of both or either of the parties the writing does not express the real agreement, or that the agreement itself was entered into through a mistake as to its subject-matter or as to its terms.

*H. E. Parson,* for plaintiff.
*Solders, Thayer & Mansfield,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Mrs. Peck brings a suit against Mrs. Osborn, alleging that the plaintiff entered into a contract in writing with the defendant, by which the defendant agreed to sell to the plaintiff a certain parcel of real estate, described in the petition, for sum of $8,375, and to convey the same to her by good and sufficient deed on payment by her (the defendant) of said sum. The plaintiff says that she has paid a part of the purchase money; that she is and at all times since the making of the contract has been ready and willing to perform on her part and pay the said purchase price to the defendant, but the defendant has notified her that she would not accept payment, and would not convey the property, and the plaintiff asks for a decree of the court that the premises be conveyed to her.

The contract upon which the plaintiff relies reads as follows:

''$50.00                                                402977.
                         ''CLEVELAND, O., Feb. 4, 1907.
''Received of T. T. Lewis a/c E. Peck, Fifty & no/100
................................:.............. dollars to apply
on purchase price of 1840 East 82nd Street.   Consideration
$8375.00.
                         ''ELIZABETH D. OSBORN.''

The evidence shows that Mrs. Osborn owned the real estate described; that some time in the early part of February, 1907, one Thomas T. Lewis, a real estate agent of this city, called on Mrs. Osborn, and asked if her property was for sale. She told him it was, and that her price was $10,000 but that she would probably take $9,000 and that he might find her a purchaser at that price if he could. Lewis went to Mr. Peck, the husband of the plaintiff, and who acted for her in the transaction, and suggested to him that he purchase the property. Peck and his wife visited the property and saw Mrs. Osborn. Lewis visited her several times, and also visited the Pecks; Mr. Peck finally said to Lewis that he would give $8,000, and perhaps $375 more. Lewis seems to have been anxious that Mrs. Osborn should sell at some price which Peck would give and having learned from Peck that he would probably give over $8,000 and perhaps as high as $8,300 or $8,375, and he went again to Mrs. Osborn. When Peck told Lewis that he would give something more than $8,000 he gave him a check for $50 to apply on the payment, if she should decide to accept the price. Subsequently, this check was taken up and another given, but as we look at the case, it is a matter of indifference about that. On this visit to Mrs. Osborn Lewis produced and asked her to sign a contract for the sale of the land at $8,375. This she refused to do. He then wrote the receipt hereinbefore quoted, which constitutes all the written contract ever entered into between the parties. Mrs. Osborn signed this receipt and the check was left with her. We find as a fact that she did not read this receipt, nor was it read to her or understood by her. It may be said that she ought to have read it, and such is the law ordinarily that she must be held to have understood what the paper was which she signed before she signed it; in any event that

she must be held to have known what it was.  But we are satisfied from the eveidence that she did not understand at the time she signed this that she was thereby pledging herself to sell this property for $8,375.  She was in feeble health at the time; she was not accustomed to the transaction of business of any such importance as this; she was in the habit of relying upon the judgment and advice of Mr. John W. Taylor, and she did say to Lewis that Mr. Taylor was in the habit of looking after her business affairs, and that she did not want to make the sale without consulting him.  But Lewis by his conduct shows that he was very anxious that the sale should be made at once; and indeed he was so anxious that he persuaded Mrs. Osborn to sign this receipt without waiting to consult Taylor or anybody else.  The price which this receipt states to be the consideration is low, as appears from the evidence; perhaps not so low that we would be justified in refusing the relief prayed for, if Mrs. Osborn had understood what she was doing when she signed this receipt, but as she did not understand it, and as she told Lewis that she would like the advice of Taylor, and as she was not accustomed to transact business of this importance on her own account, we are of the opinion that it would be inequitable to hold her to a conveyance of this property to the plaintiff.

We feel justified in this holding by the authorities, some of which we cite, and from some of which we quote.

In Section 860 of Pomeroy's Equity Jurisprudence this language is used (Vol. 2, Third Edition) :

"The second class of cases embraces those in which parol evidence of mistake is offered defensively.  The equitable remedy of the specific performanc of contracts, even when they are valid and binding at law, is not a matter of course, it is so completely governed by equitable considerations that it is sometimes, though improperly, called discretionary; it is never granted unless it is entirely in accordance with equity and good conscience.  It is therefore a well settled rule that in suits for the specific enforcement of agreements, even when written, the defendant may by means of parol evidence, show that through the mistakes of both or either of the parties, the writing does not express the real agreement or that the agreement itself was entered into through a mistake as to its subject-matter or as to its terms. In short, a court of equity will not grant its affirmative remedy

to compel the defendant to perform a contract which the court did not intend to make, or which he would not have entered into had its true effect been understood. A mistake which is entirely the defendant's own, or that of his agent, and for which the plaintiff is not directly or indirectly responsible, may be proved in defense, and may defeat a specific performance.''

Other language to the same effect is used in the remaining part of the section.

In *Bowman* v. *Cunningham*, 78 Ill., page 48, this language is used:

''If the contract is not certain and it is not clear from the evidence that the exact terms thereof were agreed upon and understood by the parties, and the contract is not fair in all its parts, it will not be specifically enforced.''

In *City of Tiffin* v. *Shawhan*, 43 Ohio State, 178, the first clause of the syllabus reads:

''The duty of a court of equity to decree specific performance of a contract to convey real estate, can not be determined by any fixed rule, but depends upon the peculiar facts and equitable considerations of each case, and rests in the sound discretion of the court, guided and regulated, however, in the exercise of that discretion, as far as may be, by precedent and established practice.''

See also *Mansfield* v. *Sherman*, 17 Atlantic, 300; *Hatch* v. *Kizer et al*, 140 Ill., 583; *Wingart* v. *Fry*, Wright's Reports, 105; *City of Fort Smith* v. *Brogan et al*, 5 Southwestern, 337. See also note to the case of *Hatch* v. *Kizer*, in 33 American State Reports, page 261.

We reach the conclusion, therefore, that the petition in this case must be dismissed, the costs will be charged one-half to each party.

In reaching this conclusion it is fair to the plaintiff to say that we find no fraud or misrepresentation on the part of either her or her husband. If the conduct of any one of the parties engaged in this transaction is to be criticised, it is that of Mr. Lewis, who became the agent of the defendant, not at her solicitation, but his own, and who does not appear to have been

wholly interested in the doing all that he could to procure for her the best price, but who seems to have been more anxious to make a sale of the property than to obtain for the defendant the highest price that could be obtained.